# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# EASTERN DIVISION

**FIRST SPECIALTY INSURANCE CORPORATION**  PETITIONER

VS.  CAUSE NO.: 1:07CV98-SA

**UNITED STATES AQUACULTURE LICENSING, et al.**  RESPONDENTS

## MEMORANDUM OPINION DENYING MOTION FOR SUMMARY JUDGMENT

This cause comes on for consideration on First Specialty Insurance Corporation's, ("Petitioner" or "First Specialty"), Motion for Summary Judgment. The Petitioner's Motion for Summary Judgment is DENIED. The Court finds as follows:

Mississippi State University ("MSU") developed and bred a new strain of catfish referred to as either "USDA 103" or "NWAC 103." United States Aquaculture Licensing ("USAL") contracted with MSU to market the NWAC 103 catfish through a licensing agreement. In that contract, MSU required that USAL would provide insurance coverage and list MSU as an additional insured. First Specialty issued a commercial general liability policy to USAL, effective April 25, 2003, to April 25, 2004, ("2003 Policy") and a renewal effective from April 28, 2004, to April 28, 2005, ("2004 Policy").

From February 20, 2001, to March 3, 2002, Bear Creek Fisheries, Inc. ("Bear Creek") purchased NWAC 103 catfish from MSU. Within a year of the sale, approximately 96 percent of the catfish fry and small fingerlings in Bear Creek's production ponds perished, including the offspring fry and fingerlings of the catfish sold. Thus, Bear Creek filed a state court action against MSU titled <u>Bear Creek Fisheries, Inc. v. Mississippi Board of Trustees of State Institution of Higher Learning</u>, Case No. CI2005-253, in the Circuit Court of Washington

County, Mississippi, ("the underlying action"), alleging breach of contract, negligence, and breach of express and implied warranties.

Upon receipt of the complaint, MSU contacted USAL and requested that First Specialty defend the underlying action. Subsequently, First Specialty filed a Petition for Declaratory Relief asking this Court declare that they have no duty to defend or indemnify USAL or MSU as to any verdicts, judgments, damages, or settlements in connection with the underlying action.

The parties have stipulated the following:

The 2004 Policy contained a Classification Limitation Endorsement and Designated Premises Endorsement. The 2003 Policy contained a Classification Limitation Endorsement, but not a Designated Premises Endorsement.

If coverage is found to exist as to USAL to the claims asserted by Bear Creek in the underlying action, MSU is entitled to coverage only to the same extent as USAL's coverage.

The death of the NWAC103 catfish was an accidental "occurrence" under the Policy.

The death of the NWAC103 catfish constitutes "physical injury to tangible property" and therefore meets the policy definition of "property damage."

Although the NWAC103 catfish sold to Bear Creek constitute [sic] USAL's and MSU's "product," the fingerlings of those NWAC103 catfish do not constitute USAL's or MSU's "product" under the Policy.

The damage to the NWAC103 catfish occurred either at Bear Creek's production ponds or at MSU at Stoneville. The death of the NWAC103 catfish did not occur at [sic] USAL's premises. The NWAC103 catfish were never handled by USAL and were never upon USAL's premises.

Thus, the parties have narrowed the issues for the Court to determine whether the Classification Endorsement and/or the Designated Premises Endorsement exclude the catfish or whether the endorsements are ambiguous requiring trial testimony to determine the true intent of the parties.

## 2003 Policy

In the 2003 Policy, the Classification Endorsement states:

In consideration of the premium charged, it is hereby understood and agreed that coverage under the policy is specifically limited to, and applies only to those operations as described under the description of hazards section of the applicable coverage part or schedule designated in the Declarations page of this policy. The policy excludes coverage for any operation not specifically listed in the coverage part, schedule or Declarations page of this policy.

The Commercial General Liability Coverage Part Declarations page states the limits of insurance as:

GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations)
$2,000,000
PRODUCTS – COMPLETED OPERATIONS AGGREGATE LIMIT     $1,000,000
. . .

The "Classification" states:

Buildings or Premises – bank or office – mercantile or manufacturing (lessors' risk only) – Other than Not-for-Profit.

Moreover, the Commercial Property Coverage Part Declarations page states:
. . .
DESCRIPTION OF PREMISES:
(Location, Construction and Occupancy) 1100 HWY 82E. INDIANOLA, MS 38751 – JOISTED MASONRY – US AQUACULTRAL [sic]

COVERAGES PROVIDED: Insurance at the described premises applies only for coverage for which a limit of insurance is shown.
(Coverage): CONTENTS

OPTIONAL COVERAGES: applicable only when entries are made in schedule below.
(Personal Property): X

## 2004 Policy

The 2004 Policy Classification Endorsement reads:

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM
PRODUCTS/COMPLETED OPERATIONS COVERAGE FORM

RAILROAD PROTECTIVE LIABILITY COVERAGE FORM
LIQUOR LIABILITY COVERAGE FORM
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE

In consideration of the premium charged, it is hereby understood and agreed that coverage under the policy is specifically limited to, and applies only to those operations as described under the description of hazards section of the applicable coverage part or schedule designated in the Declarations page of this policy. The policy excludes coverage for any operation not specifically listed in the coverage part, schedule or Declarations page of this policy.

The Commercial General Liability Coverage Part Supplemental Declarations states:

> GENERAL AGGREGATE LIMIT (Other Than Products/Completed Operations)
> $2,000,000
> PRODUCTS – COMPLETED OPERATIONS AGGREGATE LIMIT     $1,000,000
> . . .

Moreover, the Commercial General Liability Coverage Schedule reads:

> Classification
>
> BUILDINGS OR PREMISES – BANK OR OFFICE – MERCANTILE OR MANUFACTURING (LESSOR'S RISK ONLY) – OTHER THAN NOT-FOR-PROFIT (PRODUCTS – COMPLETED OPERATIONS ARE SUBJECT TO THE GENERAL AGGREGATE LIMIT)

The Designated Premises Endorsement states:

> This endorsement modifies insurance provided under the following:
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> SCHEDULE
> Premises:
> 1100 HWY 82 EAST, INDIANOLA, MS 38751
> . . .
> (If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)
>
> This insurance applies only to "bodily injury", "property damage", "personal and advertising injury" and medical expenses arising out of:
> 1. The ownership, maintenance or use of the premises shown in the Schedule and operations necessary or incidental to those premises; or
> 2. The project shown in the schedule.

Petitioner filed this Motion for Summary Judgment asking the Court find that the policy is unambiguous and a premises-only policy since the policy contains a classification and designation endorsement citing only to the building or premises with an address listed. In sum, Petitioner persists it has no duty to defend the underlying action against MSU.

Conversely, the Respondents insist that the Classification Endorsement is invalid because it contained the language "Lessors' Risk Only" when, it contends and is undisputed, that Respondent USAL was never a lessor. Alternatively, the Respondents maintain that, at the least, the endorsement is ambiguous. Moreover, the Respondents argue that the policy refers to them as a licensing conduit in their description and in the business of manufacturing in the classification. Respondent contends the Designated Premises Endorsement does not bar coverage because it is an invalid endorsement since First Specialty unilaterally without notice or consideration changed the renewal policy to add the Designated Endorsement. Nevertheless, the Respondents argue that even if it is valid, the licensing agreement between USAL and MSU includes growing fish, which is in the scope of the endorsement. In sum, the Respondents argue the policy is ambiguous and, therefore covers the death of the fish.

*STANDARD FOR MOTION FOR SUMMARY JUDGMENT*

To be entitled to summary judgment, a party must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The movant has the initial burden of proving that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Rule 56(c) compels the court to grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322, 106 S. Ct. 2548.

Before finding that no genuine issue for trial exists, the Court must first be satisfied that no reasonable trier of fact could find for the non-movant. Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).

*DISCUSSION*

The Court and the parties are in agreement that Mississippi law shall govern.[1] Mississippi law holds that an insurance policy is a contract subject to the general rules of contract interpretation. Clark v. State Farm Mut. Auto. Ins. Co., 725 So. 2d 779, 781 (Miss. 1998). Under well-settled Mississippi law, the aim of contract interpretation is to determine the common intent of the parties.

"A duty to defend arises when potential for coverage exists." Titan Indemnity Co. v. Pope, 976 So. 2d 1096, 1100 (Miss. Ct. App. 2004). An insurer's duty to defend an action against its insured is measured by the allegations in the plaintiff's pleadings in the underlying action. Id. The Court gauges the allegedly tortious underlying conduct and compares it with the words of the policy. Ingalls Shipbuilding v. Federal Ins. Co., 410 F.3d 214, 225 (5th Cir. 2005); Am. Guarantee & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 610 (5th Cir. 2001); Farmland Mut. Ins. Co. v. Scruggs, 886 So. 2d 714, 719 (Miss. 2004). In sum, a duty to defend arises if the "complaint alleges facts which are arguably within the policy's coverage." Acceptance Ins. Co. v. Powe Timber Co., Inc., 403 F. Supp. 2d 552, 554 (S.D. Miss. 2005).

"Generally, under Mississippi law, when the words of an insurance policy are plain and unambiguous, the court will afford them their plain, ordinary meaning and will apply them as written." Anglin v. Gulf Guar. Life Ins. Co., 956 So. 2d 853, 859 (Miss. 2007) (quoting Noxubee County Sch. Dist. v. United Nat'l Ins. Co., 883 So. 2d 1159, 1166 (Miss. 2004)).

---

[1] Pursuant to Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), the substantive law that shall govern is the law of the forum in which the federal court sits, which in the case *sub judice* is the State of Mississippi.

However, "ambiguous and unclear policy language must be resolved in favor of the non-drafting party – the insured. Further, provisions that limit or exclude coverage are to be construed liberally in favor of the insured and most strongly against the insurer." Id.

In order to determine the true intent of the parties, the court shall look to the "objective language of the contract." One South Inc. v. Hollowell, 963 So. 2d 1156, 1162 (Miss. 2007). Courts have implemented the "four corners" test to evaluate the language that the parties used in their agreement. Id. The court will first analyze what the parties stated "since the words employed are by far the best resource for ascertaining the intent and assigning with fairness and accuracy." Id. "The mere fact that the parties disagree about the meaning of a contract does not make the contract ambiguous as a matter of law." Turner v. Terry, 799 So. 2d 25, 32 (Miss. 2001); Cherry v. Anthony, 501 So. 2d 416, 419 (Miss. 1987).

Next, if the court cannot determine the parties' intent after assessing the language of the contract, it will "apply the discretionary 'canons' of contract construction," which includes interpreting ambiguous provisions against the drafter. Id.; see also Goldberg v. Lowe, 509 F. Supp 412, 421 (N.D. Miss. 1981) (stating that extrinsic evidence will only be considered when the written contract is ambiguous or indefinite). If the contract remains unclear, the court should then consider extrinsic or parol evidence." One South, Inc., 963 So. 2d at 1162-63.

In the case *sub judice*, the Court finds that the insurance policy, specifically the classification limitation endorsement, is ambiguous. The classification refers to "Products" and "Operations;" however, it is unclear what those terms cover under the policy. Moreover, those "limitations" imprecisely define what is covered under the policy; thus, a genuine issue of material fact exists as to the true intent of the parties.

Moreover, there is disputed evidence as to whether the Respondent received notice of the designation premises endorsement. Thus, Respondents have created a genuine issue of material fact as to whether it is an invalid endorsement, and, at the least, the designation endorsement is also ambiguous.

The case shall proceed to trial to determine the true intent of the parties through extrinsic and parol evidence. Particularly, the Court will entertain testimony through extrinsic evidence including, but not limited to, 1) the intent of the parties to cover "operations" of USAL on and off the premises, 2) whether request for coverage was "premises only," 3) ambiguities in the policy and/or endorsements, and 4) whether the 2004 renewal policy was intended to have the same terms as the 2003 policy.

*CONCLUSION*

The Court finds that the insurance policy is ambiguous, and the Court will hear testimony to ascertain the parties' true intent. Furthermore, the Respondent has created genuine issues of material fact as to the invalidity of the designated premises endorsement. Accordingly, the Petitioner's Motion for Summary Judgment is **DENIED**.

A separate order has issued in accordance with this opinion.

**SO ORDERED**, this the 30th day of July, 2008.

                                            **/s/ Sharion Aycock**
                                            **U.S. DISTRICT COURT JUDGE**